UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Eric A. Barker,

    Plaintiff,

vs.

                                            Case No.: 8:08-cv-484-T-33MAP

R.T.G. Furniture Corp.,
d/b/a/ ROOMS TO GO,

    Defendant.
_____/

## ORDER

Defendant, R.T.G. Furniture Corporation's ("RTG") Motion for Summary Judgment (the "Motion for Summary Judgment," Doc. 20) is before the Court. Plaintiff, Eric Barker ("Barker") opposes the Motion for Summary Judgment (the "Response in Opposition," Doc. 28). For the reasons that follow, the Court will grant the Motion for Summary Judgment (Doc. 20).

### I. Factual and Procedural Background

Barker sues RTG for violations of both the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA") and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA") (Doc. 13). Barker claims that after he alerted his supervisor that he intended to apply for FMLA leave, his supervisor attempted to transfer him to an undesirable location and, subsequently, terminated him. Barker claims that, when RTG attempted to transfer him and then terminated him, RTG both interfered with the exercise of his rights under the

FMLA and retaliated against him for attempting to exercise his rights under the FMLA. In addition, pursuant to the ADA, Barker claims that RTG discriminated against him as a "qualified individual with a disability."

RTG moves for summary judgement (Doc. 20) and argues that Barker fails to qualify for relief under either the FMLA or the ADA. In addition, RTG argues that even if Barker qualifies for relief, Barker fails to demonstrate that his rights were violated under either statute because Barker fails to demonstrate a *prima facie* case under either statute. Further, RTG argues that RTG had legitimate, non-discriminatory reasons for the employment decisions.

## II. Summary Judgment Standard

A motion for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, demonstrate that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A conflict in substantial evidence must exist to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989). Substantial evidence is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." Id. at 1045.

The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex, 477 U.S. at 323. For summary judgment purposes, the court examines the evidence in the light most favorable to the non-movant and draws all justifiable

inferences in the non-movant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). After the moving party properly demonstrates the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings to designate specific facts showing that a genuine issue exists for trial. Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997); see also LaRoche v. Denny's, Inc., 62 F.Supp.2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear ... that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. The existence of a scintilla of evidence in support of the non-movant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 252. A general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991). "Further, and significantly, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient

to defeat a well-supported motion for summary judgment." Hansen v. Perry Techs., 206 F.Supp.2d 1223, 1225 (S.D. Fla. 2002).

**III.     Discussion**

**Background[1]**

In 2005, Barker began working for RTG as a warehouse associate in Lakeland, Florida. In 2006, he was transferred to the position of PC Technician and supervised by Richard Brown ("Brown"). Brown performed Barker's annual evaluations. Generally, Barker received favorable evaluations that found that Barker "met or exceeded his job requirements."

In 2007, Barker visited a registered nurse employed by RTG to discuss recent episodes he had begun to experience at work. The registered nurse recommended that Barker visit a physician. On January 21, 2008, Barker visited Dr. Manesh Parekh for a 30-minute consultation. Dr. Parekh provisionally diagnosed Barker as suffering from bi-polar disorder and anxiety disorder. Barker met with Dr. Parekh three times from January and February of 2008. Although Dr. Parekh referred Barker to a psychiatrist, Barker never met with any other mental health professionals after his third visit with Dr. Parekh.

On February 7, 2008, Brown visited the Lakeland facility, and Barker requested a private meeting. Barker informed Brown that he had been preliminarily diagnosed with bi-polar disorder and anxiety disorder. Further, Barker indicated that he was considering

---

[1] Consistent with summary judgment standards, the facts stated are either undisputed or stated in a light most favorable to Barker. See White v. Mercury Marine Div. of Brunswick, Inc., 129 F.3d 1428, 1430 (11th Cir. 1997).

4

requesting FMLA leave. At that time, Brown informed Barker that Brown had decided to transfer Barker to the RTG Seffner facility.

Barker refused the transfer. Following the conversation with Brown, Barker spoke to RTG human resources and decided to rescind his refusal to transfer. Later that day, Brown informed Barker that he had been terminated for refusing to transfer.

**The FMLA**

The FMLA authorizes an eligible employee to take up to 12 weeks of unpaid leave per year for a "serious medical condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" that right. 9 U.S.C. § 2615(a). The Eleventh Circuit has recognized that the FMLA creates two types of claims: "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the [FMLA], and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the [FMLA]." Krutzig v. Pulte Home Corp., 2009 WL 1044018 (M.D. Fla. Apr. 16, 2009); see also Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1293 (11th Cir. 2006) (internal citations omitted); Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206 (11th Cir. 2001). To state a claim for interference pursuant to the FMLA, "a plaintiff need only demonstrate that he was entitled to but denied the right." Strickland, 239 F.3d 1199, 1207 (11th Cir. 2001). To state a claim for retaliation, a plaintiff must demonstrate that (1) he engaged in statutorily protected activity, (2) he

5

suffered an adverse employment decision, and (3) the decision was causally related to the protected activity. Hurlbert, 439 F.3d at 1297.

However, prior to reaching the question of either interference or retaliation, the plaintiff must satisfy the threshold showing that he was both eligible for and entitled to FMLA leave. See Allen v. Progress Energy, Inc., 2009 WL 425966 at *5 (M.D. Fla. Feb. 20, 2009); Russell v. N. Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003) ("Interference and retaliation claims both require the employee to establish a 'serious health condition'"). Neither party disputes whether Barker was an eligible employee pursuant to the FMLA. However, RTG disputes whether Barker was entitled to FMLA leave and argues that Barker was not suffering from a "serious health condition." A plaintiff's basic entitlement to FMLA leave depends on whether the plaintiff had a "serious health condition" within the meaning of the FMLA. 29 U.S.C. § 2612(a)(1)(D); Russell, 346 F.3d at 1340.

The provisions of the FMLA pertinent to whether Barker had a qualifying "serious health condition" provide that FMLA employers are required to grant leave to eligible employees "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the employee's job." 29 C.F.R. § 825.112(a)(4) (referring §§ 825.113 and 825.123). An employee is "unable to perform the functions of the position" where "the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position." 29 C.F.R. § 825.123. A "'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment or physical or mental condition that involves . . . continuing

6

treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113(a). A serious health condition involving continuing treatment by a health care provider includes "chronic conditions,"[2] which are defined as "[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition" that:

> (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider; (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and (3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c). "'[I]ncapacity' means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). The Eleventh Circuit held that under the FMLA "a demonstration that an employee is unable to work in his or her current job due to a serious health condition is enough to show that the employee is incapacitated, even if that job is the only one the employee is unable to perform." Krutzig v. Pulte Home Corp., 2009 WL 1044018 *5 (M.D.Fla. April 16, 2009) (citing Hurlbert, 439 F.3d at 1295).

Barker claims that he suffered from bi-polar disorder and anxiety disorder and that he experienced problems at work due to the disorders. Further, Barker claims that the medications prescribed for the disorders were powerful and unpredictable. He claims to

---

[2]In addition to (c) chronic conditions, a serious health condition involving continuing treatment by a health care provider also includes the following subsections: (a) incapacity and treatment, which requires "a period of incapacity of more than three consecutive, full calendar days . . . ."; (b) pregnancy or prenatal care; (d) permanent or long term conditions, which requires a "period of incapacity which is permanent or long term"; and (e) conditions requiring multiple treatments for restorative surgery or for a condition that will result in an absence of more than three consecutive days. 29 C.F.R. § 825.115. The facts do not support a claim pursuant to any of these subsections describing a "serious health condition."

7

have suffered panic attacks that resulted in episodic incapacity. Barker claims that he required intermittent leave due to the disorders. However, Barker's Response in Opposition to the Motion for Summary Judgment contains no citations to record evidence that corroborates his claims. Barker's general uncorroborated testimony that he suffered from a serious condition is insufficient to raise a genuine issue of material fact. See Hansen v. Perry Techs., 206 F.Supp.2d 1223, 1225 (S.D. Fla. 2002) ("Further, and significantly, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment."); see also Caskey v. Colgate-Palmolive Co., 535 F.3d 585 (7th Cir. 2008); Haefling v. UPS, Inc., 169 F.3d 494, 499 (7th Cir. 1999) ("Whether an illness or injury constitutes a 'serious health condition' under the FMLA is a legal question that an employee may not sidestep in the context of summary judgment merely by alleging [the] condition to be so.").

No evidence other than Barker's testimony supports that Barker suffered from a chronic condition. Although the record demonstrates that Barker received treatment for depression and anxiety, Barker offered no evidence that any treatment or condition resulted in, or would result in, incapacity or absence. No evidence establishes that he was incapacitated due to his condition or that he was unable to perform the functions of his position. Barker provides no medical support for his claims. Barker relies on the deposition testimony of Dr. Parekh to establish that he was preliminarily diagnosed with "bi-polar disorder" and "anxiety disorder." However, a diagnosis is insufficient alone to demonstrate

entitlement to FMLA leave. See, e.g., Rask v. Fresenius Med. Care N. A., 509 F.3d 466, 473 (8th Cir. 2007).

Barker fails to demonstrate that any physician ever recommended that he take leave from employment or that he qualified for FMLA leave. Dr. Parekh's deposition testimony fails to corroborate Barker's claims. Dr. Parekh failed to recall discussing FMLA leave with Barker. Further, Dr. Parekh testified that he never advised Barker that he would require leave due to his condition or treatment. Barker fails to establish that a medical professional recommended that his condition would require medical leave. See, e.g., Hegre v. Alberto-Culver USA, Inc., 485 F.Supp.2d 1367 (S.D. Ga. 2007) (finding that if a plaintiff fails to provide evidence that healthcare provider discussed or recommended that the plaintiff would need to take medical leave as a result of treatment, no FMLA claim for either interference or retaliation could stand).

Barker claims that he suffered short periods of incapacity when at work. Again, Barker's unsupported testimony and self-diagnosed "incapacity" is insufficient. Further, Barker claims that he never left work and was never unable to perform the functions of his position. The absence of evidence to support that the plaintiff is unable to perform job functions is fatal to both interference and retaliation claims. Hegre, 485 F.Supp.2d at 1379.

Barker fails to demonstrate that he suffered from a serious health condition because he fails to provide evidence that he suffers from a chronic condition, that he was ever incapacitated, or that he was unable to perform the functions of his position. Because Barker did not suffer a chronic condition, his various afflictions do not amount to a serious health

condition, and therefore he had no right to FMLA leave on February 7, 2008. Accordingly, Barker fails to demonstrate the threshold showing that he was entitled to FMLA leave because he suffered from a serious medical condition. The Motion for Summary Judgment on the FMLA claims will be **GRANTED**.

**The ADA**

The ADA prohibits employers from discriminating in employment against otherwise qualified individuals with a disability. 42 U.S.C. § 12101. To survive summary judgment, Barker must establish a *prima facie* case of discrimination by showing that (1) he has a disability, (2) he is a qualified individual ("meaning he could perform the essential functions of the job in question with or without reasonable accommodations"), and (3) RTG unlawfully discriminated against him because of his disability. Brown v. Sec. of Fla. Dept. of Corrections, 2009 WL 530103 at *7 (N.D. Fla. Feb. 27, 2009); see also Albright v. Columbia County Board of Educ., 135 Fed.Appx. 344 (11th Cir. 2005) (citing Rossbach v. City of Miami, 371 F.3d 1354, 1356-57 (11th Cir. 2004)); Hilburn v. Muarata Electronics N.A., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999).

RTG argues that Barker cannot establish the elements of the *prima facie* ADA case because Barker fails to demonstrate that he has a disability and fails to demonstrate that RTG unlawfully discriminated against Barker because of any perceived disability. Neither party disputes that Barker was a "qualified individual" under the second prong. Further, RTG argues that even if Barker demonstrates the *prima facie* case, RTG had legitimate, non-discriminatory reasons for both transferring and terminating Barker.

"A plaintiff may seek redress for discrimination under the ADA if that individual is a 'qualified individual with a disability.'" Slomcenski v. Citibank, 432 F.3d 1271, 1279 (11th Cir. 2005). A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A "disability" is "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(2). Thus, a "qualified individual with a disability" is a person who is actually disabled, recorded as disabled, or "regarded as" disabled. Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999), *superseded by statute*, eff. Jan. 1, 2009, Pub. L. No 110-325, 122 Stat. 3553 (2008).

Congress recently enacted major changes to the ADA. By adoption of the Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008), effective January 1 2009, Congress has expressly instructed courts that "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals." Pub.L. No. 110-325, § 4(a). Barker makes no argument that the amendments should apply retroactively; and absent Congressional expression to the contrary, a presumption against retroactive application applies when the new legislation would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf v. USI Film Products, 114 S.Ct. 1483, 1505 (1994). So, the Court looks to the ADA as it was in effect at the time of the alleged

discrimination. See Fikes v. Wal-Mart, Inc., 2009 WL 961774 * 1, n.1 (11th Cir. Apr.10, 2009).

Barker claims neither a disability nor a record of disability but instead argues that RTG regarded him as disabled. Specifically, Barker claims that "Brown 'regarded' Barker as substantially limited in the major life activity of working and driving." (Doc. 28, p. 12.)

To satisfy the "regarded as" provision of the ADA, Barker must show that RTG entertained a misperception about him. Sutton, 527 U.S. at 489. A misperception exists if an employer believes "either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." Id. Barker must demonstrate that (1) the perceived impairment involves a major life activity, and (2) the perceived impairment is "substantially limiting" and significant. Rossbach v. City of Miami, 371 F.3d 1354, 1360 (11th Cir. 2004) (citing Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir. 1999)).

Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Generally, driving is not a major life activity for purposes of the ADA.[3] Collado v. UPS, Co., 419 F.3d 1143, 1158 (11th Cir. 2005) (citing Chenoweth v. Hillsborough County, 250 F.3d 1328, 1329 (11th Cir. 2001) (noting that, while the enumeration of major life activities in the Equal Employment Opportunity Commission regulations is not

---

[3] Even if driving were considered a major life activity for the purposes of the ADA, Barker fails to demonstrate that Brown regarded Barker as having an impairment that substantially limited his ability to drive. Brown's consideration of a doctor's recommendation regarding Barker's transfer fails to demonstrate that Brown regarded Barker as unable to drive due to any perceived disability.

12

exhaustive, "driving is not only absent from the list but is conspicuously different in character from the activities that are listed")).

With respect to the major life activity of working, "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. §§ 1630.2(j)(3)(i).

In support of his argument that RTG and Brown regarded Barker as having an impairment that substantially limited his ability to work and to drive, Barker states that "Brown has an expression of disgust on his face" when Barker informed Brown that Barker suffered from a medical condition and would seek FMLA leave. Further, Barker argues that Brown "recognized that Barker might be entitled to accommodation regarding driving to Seffner" and that Brown was considering the impact of the transfer on Barker. None of this proffered evidence demonstrates that Brown regarded Barker as having an impairment that substantially limits a major life activity.

Barker claims that Brown perceived both that Barker was impaired and that Barker's impairment affected his ability to work and drive. Barker fails to demonstrate that Brown regarded Barker as disabled. Barker presents no evidence that demonstrates that Brown "regarded him through the lens of his medical condition." Luna v. Walgreen Co., 575

F.Supp.2d 1326, 1341 (S.D. Fla. 2008). No evidence suggests that RTG or Brown entertained any negative misperceptions of Barker's abilities. Id.

Even if Barker could demonstrate that Brown regarded him as disabled, Barker has not shown that Brown regarded his impairment as affecting "major life activities" as defined by the ADA. Barker's arguments indicate that any perception Brown entertained about Barker's abilities were associated with a particular job and not associated with Barker's ability to perform tasks in daily life. The Supreme Court has cautioned against recasting "an inability to perform a specific job . . . as an inability to perform a 'class' of tasks associated with that specific job." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 201 (2002), *superseded by statute*, eff. Jan. 1, 2009, Pub. L. No 110-325, 122 Stat. 3553 (2008). Brown's perception (erroneous or not) that Barker could not work in a specific location is insufficient to establish a claim pursuant to the ADA.

Further, Barker fails to demonstrate that Brown perceived Barker as having an impairment that affected his ability to engage in the major life activity of working. Brown's conduct fails to demonstrate that he regarded Barker as having an impairment that "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." See 29 C.F.R. § 1630.2(j)(3)(i); see also Loperena v. Scott, 2009 WL 1066253 at *13 (M.D. Fla. Apr. 21, 2009) (citing Sutton, 527 U.S. at 492 ("To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice.")).

14

Nothing in the record demonstrates that Brown or any other person at RTG regarded Barker as having an impairment that substantially limits a major life activity.[4] Accordingly, Barker fails to establish a *prima facie* case of discrimination under the ADA. The Motion for Summary Judgment on the ADA claim will be **GRANTED**.

### IV. Conclusion

For the reasons stated above, the Motion for Summary Judgment (Doc. 20) will be granted.

Accordingly, it is now

**ORDERED**, **ADJUDGED** and **DECREED**:

---

[4] Even if Barker had successfully demonstrated that RTG regarded him as disabled, Barker fails to address the third element to establish a *prima facie* case. Barker fails to respond to RTG's argument that RTG did not unlawfully discriminated against him because of the perceived disability. Thus, Barker fails to demonstrate a *prima facie* case of discrimination under the ADA.

Further, if Barker had demonstrated a *prima facie* case for a claim pursuant to the ADA, RTG may rebut the presumption of discrimination under the ADA by offering legitimate, non-discriminatory reasons for both his transfer and termination. Earl v. Mervyns, Inc., 207 F.3d 1362, 1365 (11th Cir. 2000). To resolve a claim of disability discrimination, the ADA applies the burden-shifting analysis set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). See also Earl, 207 F.3d at 1365. Using this burden-shifting approach, if Barker establishes the *prima facie* case, the burden then shifts to RTG to provide a legitimate, non-discriminatory reason for the termination. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). If RTG articulates a non-discriminatory reason, the presumption of discrimination is rebutted, and Barker must demonstrate that the proffered reason was pretextual. Wascura v. City of S. Miami, 257 F.3d 12138, 1243 (11th Cir. 2001). If the plaintiff fails to produce sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual, the defendant is entitled to summary judgment. Id.

RTG's "burden of rebuttal is exceedingly light"; "the defendant need not persuade the court that it was actually motivated by the proffered reasons . . . it is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Texas Dept. of Cmty Affairs v. Burdine, 450 U.S. 248, 254-55 (1981). At this stage of the inquiry, the defendant need not persuade the Court that its proffered reasons are legitimate; the defendant's burden is "merely one of production, not proof." Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir. 1982). RTG claims that Brown chose to transfer Barker due to behavioral problems and in order to observe his conduct and that Brown terminated Barker due to insubordination, refusal to transfer, and his perceived resignation. RTG meets its burden of demonstrating a legitimate, non-discriminatory reason for Barker's transfer and termination. However, Barker fails to address whether RTG's proffered non-discriminatory reasons were pretextual. This failure alone entitles RTG to summary judgment.

The Motion for Summary Judgment (Doc. 20) is **GRANTED**. The **CLERK** is **DIRECTED** to **CLOSE** this case and terminate all pending motions and deadlines.

**DONE** and **ORDERED** from Chambers in Tampa, Florida on this 22nd day of June 2009.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record